Argued and submitted June 15, affirmed July 11, 1984

## STATE OF OREGON,
*Appellant,*

*v.*

## ROBERT SCOTT COCHRAN,
*Respondent.*

(M83-539; CA A30761)

683 P2d 1038

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Philip M. Suarez, Roseburg, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

Van Hoomissen, J., dissenting.

### GILLETTE, P. J.

The state appeals from an order of the district court sustaining a pretrial demurrer and dismissing a charge of illegal possession of human remains. ORS 138.060(1). The state argues that the charging instrument was written in the language of the pertinent criminal statute and is, therefore, sufficiently definite to withstand demurrer. We disagree and therefore affirm.

The statute under which defendant was charged, ORS 97.745(2), provides, in pertinent part:

> "No person shall: (a) Possess any native Indian artifacts or human remains taken from a native Indian cairn or grave * * *."

The information filed against defendant alleges, in pertinent part:

> "The defendant between May 12, 1981 and May 31, 1981, * * * did unlawfully and knowingly possess human remains taken from a native Indian grave [contrary to law] * * *."

Defendant filed a demurrer (which he denominated an "objection to charge"), maintaining that the statute was only intended to forbid possession of *Indian* remains and that the charging instrument should therefore be dismissed because it fails to allege that the remains in question were Indian. The trial judge agreed and dismissed the charge. This appeal followed.

On appeal, the state argues that the term "native Indian," as used in the phrase "[p]ossess any native Indian artifacts or human remains" in the first part of ORS 97.745(2), modifies only the word "artifacts," not the further phrase "human remains." That being so, the state argues, the charging instrument was written in the pertinent language of the statute and the demurrer should not have been sustained. *See State v. Strandquist,* 57 Or App 404, 407, 644 P2d 658, *rev den* 293 Or 483 (1982). Defendant acknowledges the *Strandquist* rule but argues that, without alleging that the human remains were Indian, the charging instrument was not drawn in the language of the statute.

Although the statute is ambiguous and the resolution of the issue presented is not wholly free from doubt, we are

satisfied that the trial judge was correct: "Native Indian" modifies "human remains" as well as "artifacts." We are persuaded by the fact that the whole purpose of the statute is to protect the native Indian heritage and culture; expanding the class of protected human remains to include those of other races and ethnic origins that happen to be—for whatever reason—*in* Indian graves therefore seems to refocus the statute's purpose. It could be argued that the legislature intended special protection for Indian gravesites and gave them the broadest possible protection by forbidding the removal of any human remains from them. We reject this construction because, if *that* were the legislature's focus, we think it would also have forbidden the removal of *any*—not just Indian—*artifacts* as well.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I would hold that the information is sufficient to withstand a demurrer on the ground that the facts stated do not constitute an offense. ORS 97.745(2)(a); *State v. Strandquist,* 57 Or App 404, 407, 644 P2d 658 (1982).

The legislature intended to protect native Indian gravesites, not simply their contents. I agree with the state's argument:

> "The allegation that the human remains defendant possessed were 'taken from a native Indian grave' is sufficient to apprise a person of common understanding that the remains in question are allegedly those of a native Indian, or at least those of a person buried by native Indians, in accordance with native Indian custom, and therefore, buried in a 'native Indian grave' which is entitled to the protection afforded such graves by ORS 97.745."

The majority finds that the purpose of the statute is to protect native Indian heritage and culture. I agree. However, I doubt that the legislature ever intended that a grave robber's culpability would be determined by *whose* remains were in the gravesite.

I would reverse and remand for trial. Accordingly, I dissent.